IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TREMONT WILLIAMS, #1186796, | ) | |
|     Petitioner, | ) | |
| | ) | |
| v. | ) | 3:08-CV-0394-B |
| | ) | |
| NATHANIEL QUARTERMAN, Texas | ) | |
| Departmentof Criminal Justice, | ) | |
| Correctional Institutions Division, | ) | |
|     Respondent. | ) | |

## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to the provisions of 28 U.S.C. § 636(b), and an order of the Court in implementation thereof, this case has been referred to the United States Magistrate Judge. The findings, conclusions and recommendation of the Magistrate Judge, as evidenced by his signature thereto, are as follows:

FINDINGS AND CONCLUSIONS:

Type of Case: This is a *pro se* petition for habeas corpus relief filed by a state inmate pursuant to 28 U.S.C. § 2254.

Parties: Petitioner is currently confined within the Texas Department of Criminal Justice -- Correctional Institutions Division (TDCJ-CID) at the Neal Unit in Amarillo, Texas. Respondent is the Director of TDCJ-CID. The court issued process in this case.

Statement of Case: On August 7, 2003, Petitioner pled nolo contendere to two charges of third-degree felony driving while intoxicated in Bexar County, Texas. (Respondent's Answer at 2). Punishment was assessed at twelve years imprisonment on each conviction. (*Id.*).

In this action, Petitioner does not challenge the validity of his underlying criminal

convictions and sentences; rather, he seeks to overturn a prison disciplinary proceeding, Case No. 20070345432, which on August 31, 2007, charged him with establishing an inappropriate relationship with a staff member at the Sanders Estes Unit in Venus, Texas. *See* Disciplinary Hearing Records (DHR) at 001. Following a hearing on September 19, 2007, the disciplinary hearing officer found Petitioner guilty on the basis of the accusing officer's testimony, which in turn was based solely on a correctional officer's uncorroborated, unsworn, hearsay statement. *Id.* Punishment was assessed as follows: 45 days of recreation, commissary and property restriction; reduction in class from L2 to L3; and 45 days loss of good time credits. *Id.* Petitioner exhausted his administrative remedies by filing step 1 and step 2 grievances. *See* Disciplinary Grievance Record (DGR).

In his timely petition for a writ of habeas corpus,[1] Petitioner alleges as follows: (1) the evidence was insufficient to support a finding of guilt; (2) Petitioner was not permitted to call or question two requested witnesses; (3) Petitioner was denied effective assistance of counsel; (4) TDCJ-CID violated his double jeopardy interests by dismissing the disciplinary case and then reinstating it; and (5) when TDCJ-CID reheard his disciplinary case, it did not hear new evidence, but still punished Petitioner more severely than it had in the first hearing.

In response to the order to show cause, Respondent submitted a copy of the disciplinary records along with an answer seeking denial of the petition on the merits. Petitioner filed a reply

---

[1] In disciplinary proceedings, the one-year period starts from date on which Petitioner was found guilty of the disciplinary violation and learned of the loss of good time credits, although tolling is allowed during the pendency of grievance proceeding. *See Kimbrell v. Cockrell*, 311 F.3d 361 (5th Cir. 2002).

rebutting Respondent's contentions.[2]

Findings and Conclusions: Because Petitioner is eligible for release to mandatory supervision and he lost 45 days of good-time credits, the court must determine whether due process requirements were satisfied during the disciplinary proceedings at issue in this case. *See Teague v. Quarterman*, 482 F.3d 769, 776-778 (5th Cir. 2007) (Texas mandatory supervision scheme afforded inmate a protected liberty interest in his previously-earned good-time credits under either prior or amended mandatory supervision scheme, and there was no *de minimis* floor for Texas inmate's loss of those credits, and administrative tribunal could not take them away without affording inmate due process); *Malchi v. Thaler*, 211 F.3d 953, 957-958 (5th Cir. 2000).[3]

---

[2] Throughout his pleadings, Petitioner contends that on July 17, 2007, he was charged with the same disciplinary violation, Cause No. 20070322230, which was subsequently dismissed at an unspecified date with permission to rewrite the case. (Petitioner's Reply at Attachments A and B). Respondent disputes whether a disciplinary hearing was conducted on the first offense report. (Respondent's Answer at 12). He contends the charges were dropped "because all the evidence came from a confidential source, and this evidence was found to be insufficient to support a conviction." (*Id.*).

Attached to Petitioner's reply is a copy of the disciplinary hearing report for the first offense (reflecting that a hearing was held on July 26, 2007) and copies of the step 1 and step 2 grievances submitted after Petitioner was found guilty of the first offense. *See* Petitioner's Reply at Attachments A and B).

Regardless of whether a hearing was held, it is clear that the first offense was dismissed with permission to refile, and that the second offense was filed on August 31, 2007, after the warden sought and obtained a thirty-day extension. (DHR at 10).

[3] None of the other sanctions which Petitioner received for the disciplinary conviction at issue deprived him of a protected liberty interest, and as such cannot provide a basis for the due process claims at issue in this case. It is well established that the forty-five days of commissary, recreation and property restrictions do not raise due process concerns. *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997) (commissary and cell restrictions do not impose a significant or atypical hardship on the inmate in relation to the ordinary incidents of prison life). The same holds true with respect to the reduction in Petitioner's line class from L2 to L3. The Fifth Circuit has held that the effect of a change in a prisoner's good-time earning status on the timing of his release on mandatory supervision is too speculative to afford him a constitutionally cognizable "right" to a particular time-earning status. *Malchi*, 211 F.3d at 959;

3

In his first ground, Petitioner challenges the sufficiency of the evidence. Disciplinary sanctions imposed by prison officials must be supported by "some evidence" to be consistent with due process. *See Superintendent, Mass. Correctional Inst., Walpole v. Hill*, 472 U.S. 445, 454-55, 105 S. Ct. 2768, 2774 (1985); *Broussard v. Johnson*, 253 F.3d 874, 876 (5th Cir. 2001). It is well settled, however, that "federal courts cannot retry every prison disciplinary dispute; rather the court may act only where arbitrary or capricious action is shown." *Reeves v. Pettcox,* 19 F.3d 1060, 1062 (5th Cir. 1994). In other words, when reviewing a prison disciplinary decision, "the standard to be applied is whether or not actions of the disciplinary committee were arbitrary and capricious or an abuse of discretion." *Smith v. Rabalais,* 659 F.2d 539, 543 (5th Cir. Unit A 1981); *see also Banuelos v. McFarland,* 41 F.3d 232, 234 (5th Cir. 1995).[4]

The Fifth Circuit has articulated a "highly deferential standard" toward the findings of prison officials in disciplinary proceedings, and has suggested that courts defer to committee findings on credibility of evidence. *See Adams v. Gunnell,* 729 F.2d 362, 370 (5th Cir. 1984) (citation omitted) (stating that the sufficiency of evidence in a disciplinary proceeding is tested by a "highly deferential standard," and choosing to defer to a prison committee's choice to

---

*Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995) (recognizing that "[t]he loss of the opportunity to earn good-time credits, which might lead to earlier parole, is a collateral consequence of [an inmate's] custodial status" and, thus, does not create a constitutionally protected liberty interest). Insofar as Petitioner contends that the loss of his good-time credits affects his release on parole, his claim fares no better. The Fifth Circuit has held that there is no constitutional expectancy in parole in Texas because it is entirely speculative whether a prisoner will be released on parole. *Madison*, 104 F.3d at 768; *see also Malchi*, 211 F.3d at 957.

[4] "The goal of this standard-variously a 'modicum of evidence,' 'any evidence,' or 'some evidence'-is to balance the need to prevent arbitrary deprivation of protected liberty interests with the need to acknowledge institutional interests and avoid administrative burdens." *Hudson v. Johnson,* 242 F.3d 534, 536 (5th Cir. 2001) (citing *Hill,* 472 U.S. at 455).

believe one witness over another).

With respect to the "some evidence" standard, the Supreme Court in *Hill* explained as follows:

> [a]scertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board.

*Hill*, 472 U.S. at 455. *See Smith v. Rabalais*, 659 F.2d 539, 545 (5th Cir. Unit A 1981) (quoting *Willis v. Ciccone*, 506 F.2d 1011, 1018, 1019 n. 11 (8th Cir. 1974)) ("No de novo review of the disciplinary board's factual finding is required, but the court must consider whether at least the decision is supported by 'some facts' – ' whether any evidence at all' supports the action taken by the prison officials.").

The record submitted by Respondent in this case consists of a tape recording of the disciplinary hearing held on September 19, 2007 (the Disciplinary Hearing Tape "(DHT)"), the written Disciplinary Hearing Record (DHR), and the Disciplinary Grievance Record (DGR).

The allegation that Petitioner established an inappropriate relationship with Officer Vera Lenard in violation of Code 30.2 of the prison rules consisted of an unsworn, written statement made by Correctional Officer K. Knighton on July 16, 2007, reiterating a conversation with Officer Lenard on June 28, 2007. (DHR at 008). Based on this statement, Major D. Wilkinson, the accusing officer, filed an offense report (*Id.* at 005) which resulted in the formal written charge at issue.

I have listened to the recording of the hearing. Due to the poor quality of the recording a written transcript of the proceeding would have been helpful. However, the recording allowed

the court to observe the perfunctory and cursory fashion in which the hearing was conducted. The evidence presented to the hearing officer consisted of Major Wilkinson reiterating that which was told to him by Officer Knighton, and a recitation of the contents of Knighton's statement into the record. Contrary to Respondent's Assertion (*see* Respondent's Answer at 10), Officer Knighton did not testify at the disciplinary hearing. Nor did Respondent make any effort to obtain the testimony of Officer Lenard, the only person other than Petitioner who could provide first hand knowledge of whether she and Petitioner had engaged in an improper relationship. On the other hand, Petitioner denied that such a relationship had occurred, noting further that Ms. Lenard's employment ended on July 4, some two weeks <u>before</u> Ms. Lenard allegedly related her involvement with him to Officer Knighton.[5]

Officer Knighton was the only individual with first hand knowledge of what Officer Lenard had told him about the alleged inappropriate relationship. Officer Vera Lenard was the only person who was competent to testify as to whether Petitioner had been involved in an inappropriate relationship which Petitioner himself denied. Lenard, however, resigned before the first offense report was written on July 17, 2007. Accusing Officer Wilkinson conceded at the disciplinary hearing that Lenard resigned before he had an opportunity to obtain a statement from her.[6]

While the court remains faithful to the Supreme Court's admonition that it should not

---

[5] Petitioner's confusion is quite understandable, given that every document in the DHR, except for Knighton's statement, lists the offense date as July 17, 2007.

[6] The disciplinary hearing officer asked Major Wilkinson when and why Officer Knighton's statement was prepared. (*See* DHT). Due to the poor quality of the tape recording, Wilkinson's response is incomprehensible. (*Id.*). Thus, the court is unable to verify when Knighton first told Wilkinson about the alleged improper relationship.

6

reweigh evidence or judge the credibility of witnesses, the only evidence in this case implicating Petitioner is a former officer's statement to another fellow officer who did not have first hand knowledge of any relevant statement or actions by Petitioner. Furthermore, no evidence was found to corroborate any of the facts alleged in the offense report or Officer Knighton's unsworn, written statement.[7] Major Wilkinson conceded at the disciplinary hearing that a search of Petitioner's personal property revealed no evidence in his possession that could possibly have connected him to the allegations in the offense report.

This case is clearly distinguishable from *Hudson v. Johnson*, 242 F.3d 534, 537 (5th Cir. 2001), in which the Fifth Circuit found that the offense report, prepared by an officer who *witnessed* the incident or infraction, standing alone, met the "some evidence" standard. Officer Knighton clearly did not have first hand knowledge of the alleged infraction. As a result, his written statement, in and of itself, cannot satisfy the "some evidence" standard. Nor can Wilkinson's testimony, which relied solely on Knighton's uncorroborated, unsworn hearsay statement, satisfy the "some evidence" requirement. The Fifth Circuit has long recognized that there must be "some indicia of reliability" to satisfy the "some evidence requirement." *Id.* at 538 (citing *Smith v. Rabalais,* 659 F.2d 539 (5th Cir.1981)); *see also Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987) (uncorroborated hearsay statement of confidential informant with no firsthand knowledge is not enough evidence to meet *Hill* standard). The Fifth Circuit in *Smith*, found "unsupported and generalized testimony based entirely on information from unidentified prison informant" sufficient under the "some evidence" standard. 659 F.2d at 545. In *Smith*,

---

[7] In his written statement, Officer Knighton related that Lenard told him that she provided Petitioner with all kinds of stuff from the "free world."

however, the indicia of reliability was satisfied because the accusing officer (who was the only witness at the disciplinary hearing) knew each of the informers, had used them in the past, and the informers each had personally witnessed the petitioner involved in drug transactions. *Id.* at 546.

In light of the above, the court concludes that the evidence presented at the disciplinary hearing was not enough to meet the "some evidence" standard in *Hill*, and that the DHO's conclusion was arbitrary and capricious. Habeas corpus relief should be granted on ground one of the petition.

In his second ground, Petitioner asserts that his due process rights were violated when the DHO denied him the opportunity to call two witnesses, Officers Lenard and Knighton. *See Wolff v. McDonnell*, 418 U.S. 539, 563-567, 94 S. Ct. 2963, 2978-80 (1974). In his third ground, Petitioner challenges the ineffective assistance of his counsel substitute on various issues. In light of the fact that Petitioner is entitled to a new disciplinary hearing because the evidence failed to satisfy the "some evidence" requirement, it is not necessary to address these grounds which are unlikely to reoccur.

In the final two grounds, Petitioner alleges that he was twice charged with and found guilty of the offense at issue, first in case number 20070322230, and second in case number 20070345432. He seeks to allege a double jeopardy violation claiming he was punished twice for the same offense, and a due process violation claiming the first case was incorrectly dismissed and then re-heard without any new evidence.

Petitioner's reliance on the double jeopardy clause is patently frivolous. Since the first case was dismissed with leave to rewrite, no double jeopardy concerns are at issue. Moreover, it

is well established that the Double Jeopardy Clause does not apply to prison disciplinary proceedings. *See Wolff*, 418 U.S. at 556, 94 S. Ct. at 2975 (prison disciplinary proceedings are not criminal in nature); *Smith v. Jackson*, 2000 WL 1598124, *1 (5th Cir. 2000) (unpublished per curiam) (the right to be free from double jeopardy does not apply to prison disciplinary proceedings); *Reed v. Quarterman*, 2007 WL 1500862, *3 (N.D. Tex. 2007) (accepting findings, conclusions and recommendation) (same); *Turner v. Johnson,* 46 F.Supp.2d 655 (S.D. Tex. 1999) (same).

RECOMMENDATION:

For the foregoing reasons, it is recommended that the first ground of the petition be GRANTED and that TDCJ be ORDERED to (1) provide Petitioner with a new, constitutionally adequate hearing within ninety (90) days of the date of the district court's order or (2) vacate Petitioner's disciplinary conviction and reinstate his good time credits.

A copy of this recommendation will be transmitted to Petitioner and counsel for Respondent.

Signed this 13th day of November, 2008.

/s/ Wm. F. Sanderson, Jr.
WM. F. SANDERSON, JR.
UNITED STATES MAGISTRATE JUDGE

NOTICE

In the event that you wish to object to this recommendation, you are hereby notified that you must file your written objections within ten days after being served with a copy of this recommendation. Pursuant to *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*), a party's failure to file written objections to these proposed findings of fact and conclusions of law within such ten-day period may bar a *de novo* determination by the district

judge of any finding of fact or conclusion of law and shall bar such party, except upon grounds of plain error, from attacking on appeal the unobjected to proposed findings of fact and conclusions of law accepted by the district court.